**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE BRUNO MARCO CARBONE** | : | **Chapter 7** |
| **Debtor.** | : | **Bky. No. 18-13852 ELF** |
| **JOHN ANTONUCCI,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| **BRUNO MARCO CARBONE,** | : | **Adv. No. 19-178** |
| **Defendant.** | : | |

# M E M O R A N D U M

## I. INTRODUCTION

In this adversary proceeding, Plaintiff John Antonucci ("Antonucci") invokes 11 U.S.C. § 727(d)(2) and requests that this court revoke the chapter 7 discharge granted to Bruno Marco Carbone ("the Debtor").

Presently before the court is the Debtor's Motion to Dismiss Antonucci's Amended Complaint ("the Amended Complaint"), filed pursuant to Fed. R. Civ. P. 12(b)(6) (incorporated by Fed. R. Bankr. P. 7012). The Debtor contends that the Amended Complaint fails to state facts upon which relief could be granted.

For the reasons explained below, the Debtor's Motion to Dismiss the Amended Complaint will be granted, and the Amended Complaint will be dismissed with prejudice.

1

## II.  PROCEDURAL HISTORY

The Debtor filed a voluntary chapter 7 bankruptcy petition on June 8, 2018 and received a discharge on September 20, 2018.

The procedural history after the entry of the Debtor's discharge is somewhat convoluted and warrants close attention because it affects the merits of the pending Motion.

### A.  The Motion to Vacate Discharge Filed in the Main Bankruptcy Case

On September 23, 2018, three (3) days after the entry of the Debtor's discharge, Antonucci filed a motion entitled "Motion to Vacate Discharge." Antonucci (who attended the §341 hearing) asserted that, during the §341 hearing, "it became apparent that there was fraud in the Debtor's schedules." (Mot. to Vacate Discharge ¶5). Specifically, Antonucci alleged that the Debtor:

- mischaracterized the status of a legal proceeding against him;
- fraudulently transferred an asset to his wife;
- failed to disclose mineral rights owned by one of his businesses; and
- stated that his construction business was defunct when it was still operating.

(Mot. to Vacate Discharge ¶¶6-15).

On February 26, 2019, the court denied Antonucci's Motion to Vacate Discharge. The court treated the motion as a motion to revoke the Debtor's discharge under 11 U.S.C. §727(d)(1), which provides for the revocation of discharge obtained through fraud where "the

requesting party did not know of such fraud until after the granting of the discharge."[1]

In denying Antonucci's motion, the court observed that Antonucci had discovered the alleged fraud at the 341 hearing. The court reasoned that because Antonucci knew of such fraud prior to the discharge, he could not seek to revoke the discharge under §727(d)(1).[2]

### B. The Initial Complaint in this Adversary Proceeding

On September 18, 2019, Antonucci initiated this adversary proceeding by filing an adversary complaint ("the Initial Complaint") requesting revocation of the Debtor's discharge under §727(d)(1) and (2). The Initial Complaint again alleged that the Debtor had committed fraud in filing bankruptcy schedules by failing to accurately disclose his income and assets. It repeated the allegations made in the Motion to Vacate Discharge, but also added some additional instances of alleged fraud in the Debtor's bankruptcy disclosures.

On October 20, 2019, the Debtor filed a motion to dismiss the Initial Complaint. On December 11, 2019, the court granted the motion on two (2) independent grounds.

First, the court ruled that the doctrine of res judicata generally barred Antonucci's second request for revocation of the Debtor's discharge. The court assumed that, to the extent that the Initial Complaint repeated the allegations in the previously denied Motion to Vacate Discharge, Antonucci was precluded from relitigating those issues. Further, to the extent that the Initial Complaint raised new factual allegations that Antonucci apparently discovered after the denial of

---

[1] It appears that neither the parties nor the court were concerned with the requirement that a request to revoke a discharge be commenced by adversary complaint. See Fed. R. Bankr. P. 7001(4). There is not necessarily anything wrong with proceeding in that fashion. See, e.g., In re Food Mgmt. Grp., LLC, 484 B.R. 574, 582-83 (S.D.N.Y. 2012); In re Gronczewski, 444 B.R. 526, 529 (Bankr. E.D. Pa. 2011).

[2] 11 U.S.C. §727(d)(1) authorizes revocation of a chapter 7 discharge obtained through fraud only if "the requesting party did not know of the fraud until after the granting of the discharge."

3

the Motion to Vacate Discharge, the court held that res judicata still applied because those alleged facts would have been discoverable by a reasonable investigation made before Antonucci filed the Motion to Vacate Discharge.[3] Thus, it appears that the court applied the res judicata principle that bars a plaintiff from "splitting a cause of action." See, e.g., Churchill v. Star Enters., 183 F.3d 184, 195 (3d Cir. 1999).

In the alternative, the court held that the Initial Complaint did not allege facts that would warrant revocation.

The §727(d)(1) claim continued to fail because the Initial Complaint itself showed that Antonucci was aware of the Debtor's alleged fraud prior to the discharge.

The §727(d)(2) claim failed because the Initial Complaint did not identify any property of the estate that the Debtor allegedly received postpetition and fraudulently failed to disclose to the Trustee. Even if the Initial Complaint could be read as alleging such facts, the court noted that it did not allege such fraud with particularity, as required by Fed. R. Civ. P. 9(b) (incorporated by Fed. R. Bankr. P. 7009).

Antonucci filed a Motion to Reconsider Dismissal of Case on December 23, 2019, requesting the opportunity to file an amended complaint. After holding a hearing on this motion, the court granted that motion on January 22, 2020, but only with respect to Count II — the §727(d)(2) claim. (Doc. # 20).[4]

---

[3] The court held that newly discovered evidence does not prevent the application of res judicata unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence. In re Carbone, Adv. 19-178, slip op. at 5 (Bankr. E.D. Pa. Dec. 11, 2019).

[4] All the rulings referenced in Part II.A. and B. above were issued by Judge Jean K. FitzSimon prior to her retirement. The main bankruptcy case and this adversary proceeding were reassigned to the undersigned judge on June 26, 2020.

4

### C. The Amended Complaint

On February 11, 2020, Antonucci filed the Amended Complaint. Consistent with the court's January 22, 2020 order, the Amended Complaint includes only a request for revocation under §727(d)(2).

The Debtor filed a Motion to Dismiss the Amended Complaint on February 25, 2020 ("the Motion"), arguing that the Amended Complaint pleads the same facts as the Initial Complaint and does not demonstrate a right to a revocation of the Debtor's discharge under §727(d)(2). More specifically, the Debtor contends that the Amended Complaint fails to plead facts showing that the Debtor acquired or became entitled to acquire postpetition estate property that he failed to deliver or disclose to the Trustee.

After granting several extensions of time to respond, Antonucci filed a response to the Motion on June 23, 2020. Antonucci argues that while most of the allegations in the Amended Complaint involve the Debtor's concealed prepetition assets, those assets may have increased in value or produced income or other value. The Debtor's knowing and fraudulent failure to disclose or report such value to the Trustee would, according to Antonucci, support a revocation of the Debtor's discharge under §727(d)(2).

## III. MOTION TO DISMISS STANDARD

The Debtor moves to dismiss the Amended Complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6) applies in adversary proceedings under Fed. R. Bankr. P. 7012. I have previously discussed the legal standard for a motion to dismiss:

> A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the factual allegations of a complaint, see Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and determines whether the plaintiff is entitled to offer evidence to support the claims, Bell

5

Atlantic Corp. v. Twombly, 550 U.S. 544, 563 n.8, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). A defendant is entitled to dismissal of a complaint only if the plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. Twombly, 550 U.S. at 547, 127 S. Ct. 1955. A claim is facially plausible where the facts set forth in the complaint allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

In evaluating the plausibility of the plaintiff's claim, the court conducts a context-specific evaluation of the complaint, drawing from its judicial experience and common sense. See, e.g., Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009); In re Universal Marketing, Inc., 460 B.R. 828, 834 (Bankr. E.D. Pa. 2011) (citing authorities). In doing so, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the plaintiff. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L.Ed.2d 59 (1984); Taliaferro v. Darby Township Zoning Board, 458 F.3d 181, 188 (3d Cir. 2006). But, the court is not bound to accept as true a legal conclusion couched as a factual allegation. Twombly, 550 U.S. at 555, 127 S. Ct. 1955; Iqbal, 556 U.S. at 678, 129 Sect. 1937.

The Third Circuit Court of Appeals has condensed these principles into a three (3) part test:
> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pled factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quotations and citations omitted).

In assessing a Rule 12(b)(6) motion, the court may "consider the allegations in the complaint, exhibits attached to the complaint and matters of public record ... [as well as] 'undisputedly authentic' documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. Unite Nat'l Ret. Fund v. Rosal Sportswear, Inc., 2007 WL 2713051, at *4 (M.D. Pa. Sept. 14, 2007) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)); see also In re Angulo, 2010 WL 1727999, at *12 n.1 (Bankr. E.D. Pa. Apr. 23, 2010).

In re Boltz-Rubinstein, 574 B.R. 542, 547-48 (Bankr. E.D. Pa. 2017).

## IV.  FACTS

As the Debtor points out, the facts alleged in the Amended Complaint largely track those alleged in the Initial Complaint.

Antonucci's primary contention is that the Debtor fraudulently failed to disclose the true nature and value of his personal assets and income when he filed his schedules and statement of financial affairs in this chapter 7 bankruptcy case.  For instance, the Amended Complaint states that the Debtor falsely asserted on Schedule I that he had no income[5] and, also, that the Debtor (and his wife) received other undisclosed income.  (Amend. Compl. ¶¶14, 21).  Examples of such undisclosed income include receipt of:

- $800.00 per month from the Debtor's mother-in-law, who lives in their residence (Id. ¶21);

- unknown funds deposited in a jointly held bank account during the years 2016-2018, with $19,148.00 deposited into this account from January to August of 2018 (Id. ¶¶22-24);[6] and

- income from PayPal, the funds deposited in his wife's bank account (Id. ¶26).

The Amended Complaint also alleged that the Debtor falsely claimed on Schedule A/B that his business  —  Carbone Bros., LLP ("Carbone Bros."), in which he held a 33.33% interest — was "defunct" and held no assets.  (Id. ¶¶34-35).  Antonucci claims this business is in fact still operating as a snow plowing business, from which the Debtor has received "significant funds."  (Id. ¶¶35, 45-46).  Antonucci highlights the Debtor's concealment of certain real estate

---

[5]   This allegation is incorrect.  The Schedule I filed by the Debtor stated that he received $1,690.00 in monthly net rental or business income. (See Bky. No. 18-13852, Doc. # 1).

[6]   The Amended Complaint also alleges a fraudulent misrepresentation in the Debtor's Statement of Financial Affairs; namely, that the Debtor allegedly earned business income of $32,881.00 in 2017 but only reported $14,100.00. (Id. ¶27-28).

7

construction work performed by Carbone Bros. Specifically mentioned is a house in Sellersville Borough that Carbone Bros. constructed sometime in 2017 with a final inspection in August 2018 allegedly worth $450,000.00. (Id. ¶¶36-37). Also referenced is a residence Carbone Bros. constructed in Lower Providence Township sometime after applying for a construction permit in 2014. Carbone Bros. allegedly incurred costs of $306,000.00 to construct this "Mt. Kirk House," for which the Debtor has failed to acknowledge any income or reimbursement.[7] (Id. ¶¶38-41).

In the prayer for relief, the Amended Complaint summarizes the above fact allegations by stating that the Debtor fraudulently failed to deliver or report his entitlement to various prepetition assets to the chapter 7 trustee. (Id. ¶¶50-56). But for this fraud, the Debtor would not have received his discharge without reporting and surrendering those assets, thereby warranting a revocation of the Debtor's discharge under §727(d)(2). (¶¶57).

## V. DISCUSSION

The Debtor argues that the Amended Complaint should be dismissed for two reasons.

First, the Debtor argues that res judicata bars Antonucci from asserting his §727(d)(2) claim.

Second, the Debtor asserts that the Amended Complaint fails to plead that the Debtor acquired any property of the estate after the bankruptcy petition was filed on June 6, 2018, which is required for a revocation of discharge under §727(d)(2).

In response, Antonucci generally asserts that res judicata does not apply to his §727(d)(2) claim and that the facts alleged present valid grounds for revocation of the Debtor's discharge.

---

[7] The Amended Complaint alleges that the owner of this property, Cathy Bird Sikora, recorded a mortgage on the property of $250,000.00 in August 2014 for a "construction loan." (Id. ¶42).

8

Upon consideration of the parties' arguments, I conclude that the Amended Complaint fails to state a plausible claim for revocation under §727(d)(2) (making it unnecessary to rule on the Debtor's res judicata argument).

### A.  11 U.S.C. §727(d)(2)

Antonucci seeks revocation of the Debtor's discharge under 11 U.S.C. §727(d)(2), which states:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
> [. . .]
> (2) the debtor ***acquired property*** that is property of the estate, ***or became entitled to acquire property*** that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee . . . .

11 U.S.C. §727(d)(2) (emphasis added).

As I stated in discussing this provision of the Bankruptcy Code in an affiliate bankruptcy case, In re Carbone, 613 B.R. 410, 414-417 (Bankr. E.D. Pa. 2020), the near unanimous conclusion of courts interpreting §727(d)(2) is that this Code section permits revocation of a debtor's discharge only in connection to a debtor's acquisition of (or receipt of entitlement to) **postpetition property that is property of the estate**. In other words, § 727(d)(2) does not provide grounds for revocation of a debtor's discharge where the only allegations involve a failure to report estate assets in which the debtor held an interest as of the commencement of the case. Id. at 416-17.  Nor, for that matter, would §727(d)(2) apply where a debtor failed to report non-estate assets acquired postpetition.

9

**B. The Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted**

The Amended Complaint primarily alleges numerous instances of fraud in the documents submitted by the Debtor in connection with his chapter 7 bankruptcy case. Antonucci specifies that ". . . the gravamen of the [Amended Complaint] deals primarily with concealed assets . . . as well as the methodology for retaining them by failing to disclose and otherwise hide such assets . . . ." (Answer ¶23). He asserts that "the assets themselves may well have increased in value, and produced other value, since the time the Debtor's case was filed." (Answer ¶23).

The alleged hidden "assets" described in the Amended Complaint may be fairly divided into two general categories: (1) unreported income from various sources, and (2) the true value of Carbone Bros., an entity in which the Debtor asserted a 33.33% interest while claiming that it was "defunct" and worthless. To be clear, Antonucci does not argue that the Debtor acquired either of these classes of assets after the commencement of the Debtor's bankruptcy case.

**1. Unreported Income**

Antonucci highlighted three (3) sources of unreported income: (1) monthly payments from the Debtor's mother-in-law, (2) monies deposited into the Debtor's and his wife's joint bank account; (3) deposits made from a PayPal account into his wife's individual bank account. For the reasons explained below, each source was not pled in a manner from which one could reasonably infer that it is property of the estate.

According to the Amended Complaint, the Debtor's mother-in-law lives at the Debtor's residence and pays the Debtor and his wife $800.00 per month. (Amend. Compl. ¶21). Mrs.

10

Carbone testified in a deposition that the money was for reimbursement of the expenses she incurred in caring for her mother.[8]

Even if such payments exceeded the actual cost of care expended during postpetition periods, the excess may have been considered postpetition earnings of Mrs. Carbone for such care, which is not property of the estate. See 11 U.S.C. §541(a)(6). At bottom, the Amended Complaint pleads no facts that would lead to a reasonable inference that the postpetition $800.00 monthly payments from the Debtor's mother-in-law constituted postpetition property of the estate that the Debtor should have disclosed to the Trustee.

Similarly, the Amended Complaint states that $19,148.00 was deposited in the Debtor's bank account (held jointly with his wife) from January to August of 2018. (Amend. Compl. ¶¶22-24). The Debtor filed his bankruptcy petition on June 8, 2018; thus, only funds deposited after that date may have been possibly (but not necessarily) postpetition property of the estate. Based on the evidence submitted with the Amended Complaint, $9,470.50 was deposited in this joint bank account from June through August 2018. (See Amend. Compl., Ex. A). It would be pure speculation to infer that this $9,470.50 in deposits represents postpetition estate property because the Amended Complaint does not describe the source of these funds.[9] There are simply no facts alleged that would permit a reasonable inference that the monies deposited in this account were postpetition property of the estate.

---

[8] Mrs. Carbone stated that she drives her mother to doctor's appointments, buys her food, clothing, medicine, and anything else her mother needs. (Amend. Compl., Ex. B, at 19-23).

[9] In fact, the Debtor's Schedule I listed a total monthly household income of $4047.92, which could easily explain the source of $9,470.50 in deposits over three months.

11

The same conclusion must be reached regarding the alleged deposits from PayPal into Mrs. Carbone's bank account. The Amended Complaint does not state the amount, source, or timing of these deposits. (See Amend. Compl. ¶26). Thus, no person could reasonably infer that such deposits are in fact postpetition property of the estate.

### 2. the value of the Carbone Bros. business.

Antonucci alleges that the Debtor has received "significant funds" from Carbone Bros. (Amend. Compl. ¶35). He claims that (1) the Debtor fraudulently misrepresented the value of Carbone Bros. on the documents filed in his 2018 bankruptcy, (2) the value of Carbone Bros. may have increased since the filing of the bankruptcy case, and (3) Carbone Bros. may have produced income that would be considered property of the estate from certain real estate transactions, for example.[10] Antonucci contends that the Debtor's alleged failure to disclose any such increased value or profits would justify revocation of the Debtor's discharge under §727(d)(2). For the reasons explained, the Amended Complaint's allegations of the Debtor's acquisition of funds from Carbone Bros. fall woefully short of demonstrating that such funds were postpetition estate property.

Under Antonucci's reading, §727(d)(2) would apply to prepetition estate property when it appreciates in value post-petition and a chapter 7 discharge could therefore be revoked where a debtor (1) knew that some prepetition property of the estate had increased in value after the filing

---

[10] With respect to the Carbone Bros. income, the Amended Complaint fails to state whether the Debtor received alleged income before or after he filed his petition. If the income represented prepetition earnings, the nondisclosure falls outside the purview of §727(d)(1). If the income represented post-petition earnings for work the Debtor performed for Carbone Brothers, then it would not be considered property of the estate. See 11 U.S.C. §541(a)(6).

12

of his bankruptcy case and (2) knowingly and fraudulently hid that increase in value from the Trustee

I find this argument inconsistent with both the plain language and legislative history of §727(d)(2). I disagree with Antonucci's suggestion regarding the applicability of §727(d)(2) to a debtor's failure to disclose a postpetition increase in value of estate property. Section 727(d)(2) speaks in terms of a debtor's ***acquisition of*** (or becoming entitled to acquire) postpetition estate property; that is, something that was not considered part of the estate on the moment the bankruptcy petition was filed. See Carbone, 613 B.R. at 414-417. Only a failure to report acquisition of such postpetition estate property to the Trustee is grounds for revocation under §727(d)(2). Id.

Congress intended §727(d)(2) to apply only to postpetition property of the estate. See id. at 415-16. Accordingly, §727(d)(2) imposes a duty on debtors to report postpetition acquisitions of estate property to the Trustee. See 6 Collier on Bankruptcy, ¶727.17[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Collier").[11]

Antonucci's reading of §727(d)(2) would impose a duty on debtors to monitor their prepetition assets and report any increases in value to the Trustee. No such duty exists under the Code or the Rules. Accordingly, the Debtor's failure to report any postpetition appreciation of the Carbone Bros. enterprise value to the Trustee does not create a cause of action for revocation under §727(d)(2).[12]

---

[11] By contrast, Fed. R. Bankr. P. 1009(a) permits — but does not require — a debtor to amend his schedules at any time before a case closes.

[12] Further, there are no facts alleged in the Amended Complaint to support the bald assertion that Carbone Bros. appreciated in value after the Debtor filed his petition.

13

I also disagree with Antonucci's suggestion that postpetition profits of Carbone Bros. constitute bankruptcy estate property. Antonucci is correct in asserting that proceeds or profits from estate property become estate property by operation of §541(a)(6).[13] And, a debtor's fraudulent failure to disclose his acquisition of those proceeds or profits to the Trustee could support revocation of discharge under §727(d)(2).

When the Debtor filed his petition, his one-third ownership interest in Carbone Bros. became property of the estate; but the assets held by the entity itself (such as the cash generated through its business activity) **did not**. See 11 U.S.C. §541(a)(1); Matter of Daugherty Constr., Inc., 188 B.R. 607, 611 (Bankr. D. Neb. 1995). While the Trustee may have been entitled to step into the Debtor's shoes and exercise his ownership interest, Carbone Brothers remains a separate legal entity, with separate property rights. See, e.g., In re Ojiegbe, 512 B.R. 513, 521 (Bankr. D. Md. 2014) ("assets that are held by a separate legal entity are not property of a debtor's estate, even if the debtor owns all of the stock or interest in the entity").

Thus, barring the applicability of a corporate veil piercing theory, the profits accruing to Carbone Bros. would not be pulled into the Debtor's bankruptcy estate under §541(a)(6).[14]

---

[13] §541(a)(6) provides that property of the estate includes: " Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case."

[14] Even if corporate profits could be considered part of the bankruptcy estate, the Amended Complaint alleges no facts from which one could reasonably infer that Carbone Bros. made any such postpetition profits. It references the two (2) houses allegedly constructed by Carbone Bros. sometime between 2014 through 2018, but the only event alleged to occur after the discharge is the final inspection conducted on the Sellersville House in August 2018. Despite its allegations that the Debtor has failed to acknowledge any income from Carbone Bros. related to its construction of the Sellersville House or the Mt. Kirk House, the Amended Complaint alleges no facts to give rise to the reasonable inference that Carbone Bros. produced profits after June 8, 2018.

In sum, the Amended Complaint fails to describe with requisite particularity any postpetition estate property that the Debtor acquired or became entitled to acquire. The Amended Complaint therefore fails to state a plausible claim for relief under §727(d)(2).

### C. The Amended Complaint Will Be Dismissed Without Leave to Amend

It is well settled that a court should grant a plaintiff leave to amend "unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Considering that, after dismissal of the initial Complaint, Antonucci was granted leave to supplement his factual allegations in an Amended Complaint, and has again failed to plead facts sufficient to sustain a claim under §727(d)(2), it is fair to infer that it would be futile to permit another attempt to plead an adequate complaint. Therefore, the Amended Complaint will be dismissed without leave to amend.

## VI. CONCLUSION

For the reasons stated above, the Debtor's Motion will be granted, and the Amended Complaint will be dismissed with prejudice.

**Date: October 2, 2020**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**